**O**

# United States District Court
# Central District of California

| | |
|---|---|
| HERMINIO CESAR CASTRO, an individual, MARIA BONILLA, an individual,<br><br>               Plaintiffs,<br>     v.<br>LOS ANGELES POLICE DEPARTMENT, CITY OF LOS ANGELES, LAPD CHIEF OF POLICE CHARLIE BECK, LAPD OFFICER VINCENT ALLARD, LAPD OFFICER ANDREW DINEEN, LAPD OFFICER OAKLEY, LAPD OFFICER LOPEZ, SERGEANT OLSON and DOES I through 10, inclusive,<br><br>               Defendants. | Case No. 2: 12-cv-6696-ODW(MANx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [83]** |

## I. INTRODUCTION

This case arises out of an altercation between Los Angeles Police Department officers and Plaintiff Herminio Cesar Castro—Plaintiff Maria Bonilla's son—on August 13, 2011. Plaintiffs subsequently brought this action alleging violations of

42 U.S.C. § 1983 and various state claims against Defendants. Defendants now move for summary judgment. For the reasons discussed below, the Court **GRANTS** the Defendants' Motion for Summary Judgment in full. (ECF No. 83.)

## II. FACTUAL BACKGROUND

On August 13, 2011, Maria Bonilla held a yard sale at her friend Evelyn Cabrera's residence. (SUF 1.) Castro was also at Cabrera's residence for the yard sale. (SUF 2.) Over the course of the day, Castro became very intoxicated—consuming half a bottle of either vodka or whiskey and a quantity of premixed alcoholic beverages called Four Locos. (SUF 3.) Indeed, Castro was so intoxicated on the night of the incident that he has no memory of his actions or the actions of the officers. (SUF 46.)

Around 9:00 p.m., police officers responded to a 911 call placed by Cabrera, who reported that Castro was fighting with and hitting his mother. (SUF 4.) The officers arrived at Cabrera's residence in full uniform, driving a marked black and white LAPD patrol car. (SUF 7.) When the officers arrived at Cabrera's residence, they observed Castro laying prone on the ground in front of the residence, with the approximately 300-pound Bonilla sitting on top of him. (SUF 6, 8–9.) As the officers approached, Bonilla dismounted Castro. (SUF 10.) The officers grasped Castro's arms while he was still on the ground, but Castro immediately sat up and wrenched his arms out of the officers' grasp. (SUF 10–11.) The officers cautioned Castro to stop resisting. (SUF 12.) Officer Allard then attempted to push Castro back down to the ground while Officer Dineen attempted to control Castro's left arm as Castro continued to struggle with the officers. (SUF 12–13.) Despite repeated warnings Castro was inexorable in his struggle with the officers. (SUF 13.)

The scuffle quickly escalated. As Castro continued to grapple with the officers, Officer Allard felt Castro's arms around his waist, grabbing at the police equipment in his belt. (SUF 15.) Then Officer Allard felt metal strike the side of his temple with force. (SUF 16.) Dazed by the blow to his head, Officer Allard yelled a warning to

Officer Dineen that Castro had a stick—not realizing that Castro had armed himself with Officer Allard's metal police baton. (SUF 17.) Officer Allard struggled to gain control of the baton, punching Castro twice in the stomach as they wrestled. (SUF 19.)

When Officer Dineen saw Castro wielding Officer Allard's baton, he drew his gun and ordered Castro to drop the baton. (SUF 20.) But as Castro continued to scuffle with Officer Allard, Officer Dineen determined that he could not safely use his firearm without risk to his partner. Consequently, Officer Dineen reholstered his gun. (SUF 21) Officer Dineen resumed his endeavor to control Castro's left arm and warned Castro that if he did not stop resisting he would use pepper spray on Castro. (SUF 23.) Castro continued struggling, and when Officer Dineen had a clear shot, he sprayed the pepper spray at Castro's face. (SUF 24.) Castro rolled over on his stomach—baton in hand—and continued to resist with sufficient force that the two officers were unable to handcuff Castro. (SUF 26.)

Meanwhile Officers Rosa Lopez and Bruce Oakley and Sergeant Gordon Olson arrived at the scene to assist taking Castro into custody. (SUF 30–31.) The officers observed the police baton in Castro's hand and heard Officer Allard's repeated warning that Castro had "a stick." (SUF 32–33.) Officer Allard then yelled out that Castro was biting him, occasioning Officer Dineen to punch Castro twice in his lower back. (SUF 34–35.) Officer Oakley attempted to wrestle the baton from Castro's hand to no avail, as Officer Lopez tried to control Castro's legs. (SUF 36–37.) Officer Oakley yelled "Break his arm!"—to warn Castro that police would escalate their force if he refused to relinquish the baton. (SUF 38.) After the warning, Officer Oakley was able to wrestle the baton from Castro's grip. (SUF 39.)

Castro was taken to Northridge Hospital after being handcuffed, hobbled, and placed in a spithood. (SUF 40–41.) Officer Allard also received medical treatment for the blow to his head. (SUF 44.)

/ / /

1  On August 3, 2012, Plaintiffs filed this action against the LAPD, City of Los
2 Angeles, Chief of Police Charlie Beck, Sergeant Olson, and the officers involved in
3 the incident. (ECF No. 1.) Castro alleges excessive force under 42 U.S.C. § 1983,
4 municipal liability and supervisory responsibility, and two state-law claims: battery by
5 a Peace Officer and false imprisonment. Bonilla, who witnessed the whole incident,
6 alleges state claims for intentional infliction of emotional distress and negligent
7 infliction of emotional distress.

### III. LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

/ / /

## IV. DISCUSSION

Defendants argue that the force used by officers to subdue Castro was objectively reasonable, and that even if unreasonable, the officers are shielded by qualified immunity. Defendants further assert that because the force used was objectively reasonable, Plaintiffs' remaining state-law claims—which depend on a finding of unreasonable force—necessarily fail. The Court considers each issue in turn.

**A. Excessive Force**

Section 1983 allows for a civil action against any person who, under color of law, causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. For excessive-force claims, the Ninth Circuit has found that "the Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest." *Pierce v. Multnomah Cnty., Or.*, 76 F.3d 1032, 1043 (9th Cir. 1996).

Fourth Amendment jurisprudence employs an "objective reasonableness" standard to evaluate excessive-force claims. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Determining whether the force exerted was unreasonable under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted).

In assessing the reasonableness of an officer's use of force, a court considers the quantum of force used and then measures the governmental interest at stake by evaluating a range of factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396; *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007). Additionally, the "calculus of reasonableness must embody allowance for the fact that

police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

Defendants argue that in light of the undisputed facts, no genuine issues of material fact exist as to whether the officers' use of force was objectively reasonable considering the seriousness of the crime they were responding to, Castro's initial resistance when officers attempted to detain him, and Castro's combativeness as the officers attempted to handcuff him. Plaintiffs argue that the officers' initial grabbing of Castro's arms as Bonilla dismounted constituted excessive force because there was no longer a crime in progress when officers arrived. Plaintiffs further assert that whether the officers' force was reasonable is a question of fact best left to the jury. For the reasons discussed below, the Court does not agree.

First, the Court notes that quantum of force initially used by officers was minimal. The officers merely grasped the arms of the highly intoxicated Castro, in an effort to detain him and keep him separated from his victim. While being physically detained in such a manner is certainly unpleasant, it is a trivial use of force that does not cause any lasting injury or pain. Use of such trivial force to detain a suspect is not a significant intrusion of a victim's Fourth Amendment rights. .

Second, severity of the crime at issue was significant. Officers Allard and Dineen responded to a call reporting domestic violence. The officers had information that a man was fighting with and hitting his mother. The officers then saw Castro— who matched the description reported in the call—pinned down by an older woman. Criminal assault and battery are not minor offenses; they affect the physical wellbeing of a third party. *See Sanders v. City of Fresno*, 551 F. Supp. 2d 1149, 1169 (E.D. Cal. 2008) (categorizing assault and battery as "at least medium level crimes despite their classification as misdemeanors."). Indeed, the Ninth Circuit has recognized the particular vitality of domestic-violence situations: "When officers respond to a domestic abuse call they understand that violence may be lurking and explode with

little warning. Indeed, more officers are killed or injured on domestic violence calls than on any other type of call." *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005) (internal quotation marks omitted). Thus, before the officers encountered Castro they had information to suggest that Castro posed a risk to his mother and possibly the officers as well. The threat was certainly diminished by the fact that Castro was pinned down by Bonilla, but the officers still acted reasonably in grasping Castro's arms to detain him and ensure his separation from Bonilla as she dismounted.

Finally, it is undisputed that Castro actively resisted arrest. Castro does not refute the officers' statements that he wrenched his arms out of the officers' grasp—which is impermissible regardless of whether the officers had probable cause to arrest him at that point. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (finding that suspects stiffening her arm and attempting to pull it away was "impermissible regardless of whether [the officer] had probable cause to arrest her."); see also *United States v. Span,* 970 F.2d 573, 580 (9th Cir.1992) (noting that the absence of probable cause does not grant an individual the right to offer resistance).

Further, the officers had probable cause to arrest Castro for a violation of California Penal Code section 148(a)[1] when Castro began to struggle with the officers despite numerous warnings to stop resisting. Officer Allard's attempt to push Castro back down to the ground and Officer Dineen's attempt to control Castro's left arm were a reasonable escalation of force to control the hostile Castro. And the danger of the situation greatly escalated when Castro acquired Officer Allard's baton—a deadly weapon—and struck Officer Allard in the head with it. Castro then continued to brandish the baton and refused to relinquish it in the scuffle. Officers would have likely been justified to use deadly force at this point. *Tennessee v. Garner*, 471 U.S. 1, 3 (1985) (finding the use of deadly force is reasonable when "the officer has probable cause to believe that the suspect poses a significant threat of death or serious

---

[1] Section 148(a)(1) prohibits resisting or obstructing a police officer in the course of his or her duties.

physical injury to the officer or others"). Consequently, the subsequent use of holds, strikes, body weight, and pepper spray utilized in an attempt to gain control of the baton—which constitute nondeadly force—was an objectively reasonable use of force. *See Garcia v. United States*, 826 F.2d 806, 812 (9th Cir. 1987).

In sum, there are no disputed facts which bear upon the officers' actions, as Castro did not dispute any facts in his Opposition. The reasonableness of the officers' force is therefore purely a matter of law. The Court finds that the amount of force used by officers never exceeded that which was reasonable and necessary under the circumstances. The officers' use of force may well have prevented the struggle from further escalating and resulting in serious bodily harm to all parties involved. Indeed, what is particularly remarkable about this case is that it is that it is not a wrongful-death action. Accordingly, for the reasons stated above, the Court **GRANTS** the Defendants' motion as to Plaintiffs' § 1983 claim for excessive force.[2]

**B. Castro's state-law claims**

Castro's battery claim fails for the same reasons that his excessive-force claim fails. Under California law, Castro's claim for battery cannot be established unless Castro proves that officers used unreasonable force against him to make a lawful arrest or detention. *See Saman v. Robbins,* 173 F.3d 1150, 1156–57, n.6 (9th Cir. 1999). Because the Court has found no violation of Castro's constitutional rights, summary judgment in favor of Defendants on Castro's state counterpart cause of action for battery is appropriate.

Similarly, Castro's false-imprisonment claim fails. California Penal Code section 847 provides that there is no civil liability for false arrest or imprisonment when "the arrest was lawful, or the peace officer, at the time of the arrest had reasonable cause to believe the arrest was lawful." As discussed above, the officers had multiple reasons to lawfully arrest Castro and accordingly are immune from

---

[2] Because the Court finds that the officers' use of force was objectively reasonable, the Court need not consider Defendants' assertion that they are entitled to qualified immunity.

liability for doing so. The Court **GRANTS** Defendants' motion on Castro's claims for battery and false imprisonment.

**C. Bonilla's state-law claims**

Finally, Bonilla asserts claims against all Defendants for negligent infliction of emotional distress (NIED) and intentional infliction of emotional distress (IIED) caused by witnessing the altercation between Castro and the defendant officers. To establish an IIED claim under California law, a plaintiff must prove "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Super. Ct.*, 54 Cal. 3d 868, 903 (1991).

Conduct is only "outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* "Summary judgment is proper if a claim cannot reasonably be regarded as so extreme and outrageous as to permit recovery." *Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991) (internal quotation marks omitted) (applying California law). Here, Bonilla's emotional-distress claims derive from Castro's constitutional claims, and thus are dependent upon a finding that officers used excessive force against Castro. But because the Court has found that the officers' use of force was objectively reasonable, the same conduct cannot reasonably be regarded as so extreme and outrageous as to permit Bonilla's recovery.

And a NIED claim is simply inapposite. As the California Supreme Court reminded litigants, the "negligent causing of emotional distress is not an independent tort, but the tort of negligence." *Burgess v. Super. Ct.*, 2 Cal. 4th 1064, 1072 (1992). Here, Bonilla alleges all *intentional* acts by Defendants, which therefore belies the requisite negligence necessary to sustain a NIED claim.

/ / /

Bonilla has not adduced any evidence that the officers committed any conduct that a reasonable person could construe as "extreme and outrageous." Thus, there is not a scintilla of evidence that the officer's conduct transcended all bounds of decency tolerated in society. Consequently the Court **GRANTS** Defendants' motion on Bonilla's emotional-distress claims.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment in its entirety. (ECF No. 83.) A judgment will issue.

**IT IS SO ORDERED.**

February 11, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**